IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

|  |  |  |
|---|---|---|
| ATIASHA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | 1:25-CV-00289-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| CITY OF ERIE POLICE | ) | |
| DEPARTMENT, ERIE COUNTY | ) | OMNIBUS MEMORANDUM OPINION |
| PRISON, WEXFORD HEALTH | ) | ON PENDING MOTIONS TO DISMISS |
| SERVICES, JOHN DOE OFFICERS | ) | |
| OF CITY OF ERIE POLICE | ) | IN RE: ECF NOS. 11, 13, 15 |
| DEPARTMENT, JOHN DOE PRISON | ) | |
| GUARDS AND MEDICAL STAFF AT | ) | |
| ERIE COUNTY PRISON, JOHN AND | ) | |
| JANE DOE STAFF OF WEXFORD, | ) | |
| DR. KANG LEE, JOHN DOE | ) | |
| PHYSICIAN, AND DEPUTY | ) | |
| WARDEN MICHAEL HOLMAN, ERIE | ) | |
| COUNTY PRISON, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

I.    Introduction

In her Complaint, Plaintiff Atiasha Williams ("Williams") asserts claims against numerous defendants based on an alleged use of excessive force against her during her arrest on June 27, 2023, and alleged deliberate indifference to her serious medical needs and medical negligence during her post-arrest detention. *See* ECF No. 1-3.[1] Williams alleges that the Defendants' unconstitutional and negligent conduct

---

[1] Williams' Complaint includes a few references to events occurring in 2025, rather than 2023. Based on their context and the Complaint in its entirety, the Court will assume the references to 2025 are typographical errors and will substitute 2023 as appropriate in its narrative of the alleged facts.

resulted in injuries, including the in-utero death of her unborn child on or about August 11, 2023. Williams also asserts a retaliation claim based on her transfer to a heightened security and more restrictive detention unit after she complained about her treatment.

Three motions to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) are pending before the Court: (1) a motion on behalf of Defendants Erie County Prison ("ECP") and ECP Warden Michael Holman (collectively "ECP Defendants") (ECF No. 11); (2) a motion on behalf of Defendant City of Erie Police Department ("EPD") (ECF No. 13); and (3) a motion on behalf of Wexford Health Sources, Inc. and Dr. Kang Lee[2] (collectively "Wexford Defendants") (ECF No. 15). In addition to the moving Defendants, Williams' Complaint names "John Doe Officers" of the EPD, "John Doe Prison Guards and Medical Staff" at ECP, and "John and Jane Doe Staff of Wexford" as Defendants.[3] The motions have been fully brief and are ready for decision.

For the reasons explained in this Omnibus Memorandum, the motions to dismiss will be GRANTED in part and DENIED in part.[4]

---

[2] The Wexford Defendants assert that Plaintiff has incorrectly identified this Defendant, that this Defendant's correct name is Kang Li, and that he is a physician's assistant, not a doctor. *See* ECF No. 15; ECF No. 16, p. 5. at 1. The Court will refer to the Defendant by his correct name.

[3] The Complaint references other medical personnel and corrections officers who provided care to Williams at ECP. These individuals are corrections officers Francis Huff and Keila Peck, ECP medical staff member Shannon Nicol, and Wexford employees "Nurse Vanessa," "Nurse Shannon," and "Nurse Joanne." *See* ECF No. 1-3, ¶¶4-5. But none of these five individuals has been formally added as a Defendant or substituted for a "Doe" Defendant. Thus, the "Doe" Defendants have yet to be properly identified, and apparently none has been served. No appearance has been entered on behalf of any Doe Defendant or any person referenced in the Complaint but not named in the caption of the case. The claims against the Doe Defendants are unaffected by the disposition of the three pending motions.

[4] All parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings as provided under 28 U.S.C. § 636(c).

II.     Factual Allegations

For purposes of the pending motions to dismiss, the Court accepts the following factual allegation of Williams' Complaint as true.

A.  The arrest and the alleged use of excessive force on June 27, 2023

On or about June 27, 2023, three EPD officers arrested Williams based on a non-violent criminal charge. ECF No. 1-3, ¶ 10. Williams was pregnant at the time of the arrest and informed the officers of her pregnancy during the encounter. *Id.* ¶10. She did not resist the officers and posed no danger to them or to the public. *Id.* Despite the officers' knowledge of Williams' pregnancy and her compliance with their directions, the officers, including one she identifies as "Kramer," aggressively threw her against walls and to the ground. *Id.* ¶¶ 12–35. Any physical movement by Williams during the encounter was purely defensive and occurred only after the officers had unnecessarily initiated force. *Id.* ¶ 36. During the arrest the officers insulted and belittled Williams. One officer stated, "If I had my way, I would shoot your black ass." *Id.* ¶ 36.

The injuries Williams sustained during the arrest required emergency treatment at UPMC Hamot, where Williams' pregnancy was medically confirmed. *Id.* ¶ 13. Following the UPMC Hamot visit, Williams was transferred to ECP. Williams had not experienced any pregnancy complications prior to her arrest. The pregnancy-related symptoms she developed thereafter were causally connected to the force used during the arrest. *Id.* ¶¶ 14–38.

3

B. Williams' detention at ECP and escalating obstetric emergency

When Williams arrived at ECP, staff were already aware of her pregnancy based on information they had received from UPMC Hamot. *Id.* ¶ 14. Despite Williams' repeated requests that ECP staff check her child's fetal heartbeat and other vitals, ECP staff did not monitor Williams' pregnancy or the condition of her unborn child during the approximately five weeks she was detained. *Id.* ¶ 1. During the early morning hours of August 2, 2023, Williams experienced labor contractions and alerted prison staff. *Id.* ¶ 15. She was evaluated by "Nurse Shannon" at approximately 5:30 a.m., at which time Williams reported active labor contractions. *Id.* ¶ 15. Nurse Shannon did not provide any immediate assessment or intervention and instead instructed Williams to wait for the physician's arrival between 6:30 and 7:00 a.m. *Id.* ¶ 15.

Physician Assistant Li arrived within the anticipated window, and Williams was escorted to the medical area by Corrections Officer Huff. *Id.* ¶ 16. Drawing on her experience with prior pregnancies, Williams informed Li that her contractions were occurring at two-to-three-minute intervals, a frequency consistent with active labor. *Id.* ¶ 17. Li checked her blood pressure, noted that it was elevated, but she did not further examine Williams or assess the status of the fetus. *Id.* ¶ 17. Williams asked to be transported to a hospital to determine why she was in early labor and to assess any risk to the fetus. Li rejected this request, told her she was not in labor, and advised her to go lie down and drink water. *Id.* No further monitoring of Williams' condition occurred that day, even as her contractions continued. *Id.*

4

On August 3, 2023, Williams continued to experience contractions and notified Corrections Officer Peck. No medical evaluation or monitoring was provided. *Id.* ¶ 18. On August 5, 2023, Williams again reported contractions to Peck and was subsequently seen by Nurse Vanessa. Nurse Vanessa conducted no examination and repeated the instruction to lie down and drink water. *Id.* ¶ 19.

On August 6, 2023, Williams' water broke. "Nurse Joanne" dismissed this development, asserted that Williams had urinated on herself, and refused to provide medical treatment or conduct any evaluation or testing. *Id.* ¶ 20.

Williams remained at ECP without treatment for five additional days following the rupture of her membranes. *Id.* ¶ 21. She was eventually transported to UPMC Hamot, where clinicians confirmed that both Williams and the fetus were in distress, that her membranes had in fact ruptured, that she was at risk for serious infection including sepsis, and that the fetal umbilical cord had been damaged. *Id.* ¶ 21. UPMC Hamot staff determined that Williams' condition required emergency care beyond what could be provided at that facility and arranged for her transport by ambulance to Magee-Women's Hospital in Pittsburgh. *Id.* ¶ 22.

The fetus died in utero on or about August 11, 2023, while Williams was in the ambulance en route to Magee-Women's Hospital. *Id.* ¶ 23. Upon confirmation of fetal death at Magee-Women's, Williams was returned by ambulance to UPMC Hamot and, following minimal treatment, was transported back to ECP for continued detention. *Id.* ¶ 24. Upon her return, ECP provided Williams with little or no medical

care and offered her no counseling or psychological support in connection with the loss of her unborn child. *Id.* ¶ 25.

C. Grievance interference and retaliatory placement in solitary confinement

Williams attempted to file a grievance at ECP regarding her treatment during the pregnancy. Those efforts were intercepted and not processed through normal channels, though the Complaint avers that her grievance attempts are documented on the inmate kiosk system at ECP. *Id.* ¶ 26. Because her internal grievances were effectively suppressed, Williams proceeded to file two pro se civil actions in the Erie County Court of Common Pleas: Case Number 2023-12212 against the City of Erie Police Department, and Case Number 2023-12211 against ECP. *Id.* ¶¶ 27–28. Upon learning that Plaintiff had taken legal action, ECP staff responded by transferring her to a solitary or high-security housing unit where she was unable to prepare or file legal paperwork. *Id.* ¶ 27. The complaint expressly avers that this transfer was not grounded in any penological justification, that Williams had not violated any institutional rules, and that the placement was in direct retaliation for her exercise of constitutionally protected legal rights. *Id.* ¶ 27.

III. Williams' Claims and Defendants' Motions to Dismiss

The Complaint asserts the following claims:

- Count I: "Excessive Force (4th Amendment)" against EPD and "John Doe Police Officers";

- Count II: "Excessive Force/Official Custom and Failure to Train (4th Amendment) against EPD;

- Count III: "Deliberate Indifference (8th Amendment)" against ECP, "Erie County Prison Staff, Wexford Medical and Wexford Staff";

- Count IV: "Failure to Train/Supervise" against ECP and Wexford;

- Count V: Medical Malpractice against P.A. Li; and

- County VI: Retaliation against ECP and Deputy Warden Holman

The ECP Defendants assert the following in support of their motion: (1) the ECP is not a "person" for purposes of Williams' civil rights claims; (2) the Complaint fails to state an Eighth Amendment claim against Warden Holman; (3) the Complaint fails to state a First Amendment retaliation claim against Warden Holman; (4) Warden Holman is entitled to qualified immunity; and (5) the Complaint fails to state a *Monell* claim against Erie County. *See* ECF No. 12. In support of its motion, EPD argues that the Complaint fails to state an excessive force or any other claim against it. *See* ECF No. 14. Finally, the Wexford Defendants argue that Count III should be dismissed as to both Wexford and P.A. Li because the facts alleged in the Complaint do not support a finding that either acted with deliberate to Williams' medical needs, and Court IV should be dismissed because the facts alleged do not support a failure to train or supervise claim against Wexford. *See* ECF No. 16. The Wexford Defendants' motion does not challenge the legal sufficiency of the medical malpractice claims against Li.

Williams has filed a brief in opposition to each motion. *See* ECF Nos. 22, 23, 24.

IV.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must, under Federal Rule of Civil Procedure 8(a)(2), contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). In other words, the plaintiff must allege facts sufficient "to raise a right to relief above the speculative level" and "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 555, 570. Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

In deciding a Rule 12(b)(6) motion, the Court accepts as true the complaint's well-pleaded factual allegations and examines them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). However, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotations and citations omitted); *see Iqbal*, 556 U.S. at 678. The Court's focus is simply whether the challenged claims should be allowed to move forward, not whether the plaintiff will ultimately prevail on his claims. *See Twombly*, 550 U.S. at 563 n.8. Further, when deciding the motion to dismiss, "a court must consider only the complaint, exhibits

8

attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

V.     Discussion and Analysis

A. EPD and ECP are not "persons" subject to suit under § 1983.

The Court will first address the claims against EPD and ECP because they suffer from common defects.  Williams asserts her claims against EPD and ECP under 42 U.S.C. § 1983.  This statute authorizes a cause of action against any "person" who, acting under color of state law, deprives another of rights secured by the Constitution or federal law.  Neither a municipal police department nor a county prison is a "person" for purposes of § 1983.  *See Lenhart v. Pennsylvania*, 528 Fed. Appx. 111, 114 (3d Cir. 2013) (county prison); *Mincy v. Deparlos*, 2011 WL 1120295, at *7 (M.D. Pa. Mar. 24, 2011) (county prison), *aff'd*, 497 Fed. Appx. 234, 239 n.5 (3d Cir. 2012); *Regan v. Upper Darby Twp.*, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App. 917 (3d Cir. 2010) (county prison, collecting cases).  Indeed, a municipal police department "is not an entity capable of being sued" under any theory.  *Fleck v. Trs. of Univ. of Pennsylvania*, 995 F. Supp. 2d 390, 402 (E.D. Pa. 2014).  "[M]unicipal police departments are not subject to suit because they 'are administrative arms of local municipalities, not separate entities.'" *Happel v. Paxton*, 2026 WL 1223984, at *4 (W.D. Pa. May 5, 2026) (citing *Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir. 2004).  *See also Deemer v. City of Oil City*, 2021 WL 4391275, at *5 (W.D. Pa. Sept. 24, 2021); *Chandler v. Sharon PD*, 2021 WL 753043,

9

at *1 (W.D. Pa. Feb. 26, 2021).  The same is true for county jails or prisons.  *See Regan v. Upper Darby Twp.*, No. CIV A 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 Fed. Appx. 917 (3d Cir. 2010).  A prison or jail is "in essence [a] a collection of buildings," not an entity capable of committing a civil violation.  *Farrell v. Northampton County*, 2015 WL 4611298, at *10 (E.D. Pa. Aug. 3, 2015).

Based on her briefing submissions, Williams apparently has come to recognize that she should have named the City of Erie, not EPD, and the County of Erie, not ECP, as Defendants.  In her brief in opposition to EPD's motion, Williams asserts that "the Erie Police Department ('EPD') is not named as a defendant, the party named was the City of Erie." ECF No. 22, p. 6.  Although the caption and substance of the Complaint tend to belie this assertion, *see, e.g.*, ECF No. 1-3, p. 4, precedent supports the Court disregarding Williams' apparent misnomer and assessing whether her factual allegations support a municipal liability claim against the City of Erie. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) ("[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability.").  Williams concedes that she named ECP and not the County, and she requests the opportunity to file an Amended Complaint to substitute the County as the appropriate institutional defendant. *See* ECF No. 24 at 3-4.  To reduce the potential for serial amendments, the Court will also assess whether the Complaint's allegations support a municipal liability claim against the County.

B. The Complaint fails to allege facts to support a §1983 claim against the City of Erie or the County of Erie.

Municipal entities such as the City of Erie and the County of Erie cannot be held liable under § 1983 for their employees' alleged constitutional violations based on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–95 (1978); *Panas v. City of Philadelphia*, 871 F. Supp. 2d 370, 377–78 (E.D. Pa. 2012). Rather, the "government itself, through its policies or practices, must be sufficiently culpable before" a court imposes § 1983 liability. *Panas*, 871 F. Supp. 2d at 377–78. Such culpability exists only "when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). Merely alleging the existence of a policy, practice, or custom is not enough. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). "A plaintiff must identify the challenged policy [or custom], attribute it to the [municipality] itself, and show a causal link between execution of the policy [or custom] and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986)). A custom may be found when the "'practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (quoting *Monell*, 436 U.S. 658, 691 (1978)).

11

"Once a plaintiff has identified a policy or custom, she 'must show that the municipal action was taken with the requisite degree of culpability, and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Abran v. City of Philadelphia*, No. 18-CV-1107, 2020 WL 6781938, at *12 (E.D. Pa. Nov. 17, 2020) (quoting *Vulcan Pioneers of New Jersey v. City of Newark*, 374 Fed. Appx. 313, 317 (3d Cir. 2010)). If the policy does not facially violate federal law, "causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.'" *Id.* (quoting *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)). Thus, "in order to impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must establish not only that he or she was deprived of a constitutional right, but that: (1) the municipality had a policy; (2) the policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (3) the policy was the 'moving force behind the constitutional violation.'" *Weber v. Erie Cnty.*, 2020 WL 5983275, at *5 (W.D. Pa. Oct. 8, 2020) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-91 (1989)).

Williams bases her municipal liability claims against both the City and the County on a failure to train theory of liability. The Supreme Court has recognized that a local government's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "If the alleged policy or custom at issue is a failure to train or supervise ..., the plaintiff must show that this failure 'amounts to 'deliberate indifference' to the

12

rights of persons with whom [the municipality's] employees will come into contact." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). Typically, a plaintiff meets this burden by identifying "a pattern of similar constitutional violations by untrained employees" that "puts municipal decisionmakers on notice that a new program is necessary...." *Johnson*, 975 F.3d at 403 (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014)). "Otherwise, the plaintiff needs to show that failure to provide the identified training would 'likely ... result in the violation of constitutional rights'—i.e., to show that 'the need for more or different training [was] so obvious." *Id.* (quoting *City of Canton*, 489 U.S. at 390).

The Third Circuit applies a three-part test to determine whether "a municipality's failure to train or supervise amount[s] to deliberate indifference." *Carter*, 181 F.3d at 357. A plaintiff must allege facts to support plausible inferences that: (1) municipal policymakers knew that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling the situation; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*; *see also Thomas*, 749 F.3d at 224–25 (quoting *Board of County Com'rs of Bryan County, Okl.*, 520 U.S. at 409). ("Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and

the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights").

In support of her claim against the City of Erie, Williams' Complaint alleges only factually unsupported conclusions of law. *See* ECF No. 1-3, ¶¶ 43-45 (the officers' excessive force "resulted from the police officers following an official policy or custom of the EPD of using excessive force, even when dealing with non-violent and non-threatening arrestees"; the officers' "actions set forth in Count I resulted from the City of Erie Police Department's deliberate indifferent failure to train or supervise these officers"; "EPD provided insufficient training to prevent the officers from engaging in excessive force in violation of the 4th Amendment"; "EPD's failure to supervise exists in the fact that EPD police officers who engage in such conduct do not receive discipline or corrective actions from the EPD"). The *Monell* claim against the County suffers from the same deficiency. It relies on conclusory allegations similar to those asserted against the City. *See Id.* ¶¶ 56-58. These allegations are insufficient to support a claim against the City or the County. *See Twombly*, 550 U.S. at 555.

Accordingly, Counts I-IV of the Complaint will be dismissed as against EPD, the City of Erie, ECP, and the County of Erie. Count VI (retaliation based on transfer to solitary confinement) against ECP and the County of Erie will also be dismissed based on the same pleading deficiencies.[5]

---

[5] The legal sufficiency of Count V against Warden Holman is separately addressed, *infra*.

C. The Complaint also fails to state a § 1983 against Wexford.

The foregoing standards and requirements for municipal liability also apply to private corporations that provide government services, such as medical care to inmates through a contract with the responsible governmental entity. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 n.4, 583 (3d Cir. 2003) (recognizing that "*Monell* applies to other private organizations faced with liability under § 1983"); *Scutella v. Trinity Food Servs.*, No. 1:23-CV-00320-RAL, 2025 WL 1594829, at *7 (W.D. Pa. Apr. 8, 2025), *report and recommendation adopted*, No. 1:23-CV-320, 2025 WL 1593299 (W.D. Pa. June 5, 2025). Thus, the § 1983 claim against Wexford also requires allegations of fact to support a finding that its employees acted pursuant to a policy or custom attributable to Wexford and that a causal connection exists between this policy or custom and Williams' constitutional injury. *Id.* The facts alleged against Wexford are identical to those against the County. The Complaint therefore also fails to state a § 1983 claim against Wexford. The Court will therefore dismiss Count IV of the Complaint as against Wexford.

D. The Complaint fails to state a deliberate indifference to medical needs claim (Count III) against Warden Holman.

The ECP Defendants argue that Williams' Complaint fails to state an Eighth Amendment deliberate indifference to medical needs claim (Count III) against Warden Holman.[6] *See* ECF No. 12 at 7. The Court does not read the Complaint to

---

[6] Although Williams has labeled her claim as an Eighth Amendment claim, her relevant constitutional protections arise under the Fourteenth Amendment. The Eighth Amendment applies to convicted inmates and extends its prohibition of cruel and unusual punishment to prison officials' "deliberate indifference" to an inmates' "serious medical needs." *See Estelle v. Gamble*, 429 U.S. 97 (1976). At the time of events at issue, Williams was a pretrial detainee at ECP. Pretrial detainees' constitutional

15

assert Count III against Holman. He is not named in the heading of Count III, and his name does not appear in any of its allegations. *See* ECF No. 1-3 at 13-15. The heading of Count III does refer to "Erie County Prison Staff (*Id* at 13)," but the allegations of Count III do not appear to include Holman. Even if Williams intended to include Holman in "Erie County Prison Staff," such group pleading is impermissible and cannot support a claim. *See Al Ummah Cmty. Ctr. v. Teaneck*, 2022 WL 16948812, at *9 (D.N.J. Nov. 15, 2022) (holding that "[m]ere conclusory allegations against defendants as a group are insufficient; 'a plaintiff cannot refer to all defendants 'who occupied different positions and presumably had distinct roles in the alleged misconduct' without specifying which defendants engaged in what wrongful conduct' ") (quoting *8 Erie St. JC LLC v. City of Jersey City*, 2020 WL 2611540, at *3 (D.N.J. May 21, 2020)). In any event, to the extent Count III can be read as against Holman, it fails because it does not support his personal involvement in the alleged constitutional violation.

Under § 1983, the plaintiff must allege facts to demonstrate the personal involvement of each named defendant in the alleged constitutional deprivation. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The facts alleged must show that each defendant's own conduct—not the conduct of others—caused or contributed to the constitutional harm. *Rode*, 845 F.2d at 1207. A supervisor's liability under §1983 cannot be based on his title or

protections regarding medical care are grounded in the Due Process Clause of the Fourteenth Amendment, which prohibits a detainee from being punished prior to an adjudication of guilt. *See Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)).

16

position alone. S.A. v. Pennsylvania Dep't of Corr., No. 1:24-CV-00343-SPB-RAL, 2025 WL 4303808, at *4 (W.D. Pa. Oct. 21, 2025), report and recommendation adopted, No. CV 24-343, 2026 WL 465743 (W.D. Pa. Feb. 18, 2026). A supervisor may arise from his adoption of a policy that caused the plaintiff's constitutional harm. Id. As previously discussed, Williams has failed to allege facts to support such a policy. A supervisor may also face liability where he participates in, directs, or acquiesces in subordinate misconduct. Id. Supervisory liability based on participation, direction, or acquiescence, however, must be based on factual allegations that support an inference that the supervisor personally participated in, directed, or had actual knowledge of and acquiesced in the subordinate's misconduct. Rode, 845 F.2d at 1207. "Allegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." Id.

The Complaint does not include any factual allegations to support an inference that Holman personally participated in, directed, or had actual knowledge of and acquiesced in the mistreatment and neglect of Williams. The Complaint therefore does not support a plausible Fourteenth Amendment deliberate indifference claim against Holman. The Court will dismiss Count III to the extent it is asserted against Holman.

> E. The Complaint alleges facts sufficient to state a First Amendment retaliation claim against Warden Holman.

At Count VI, Williams asserts a First Amendment retaliation claim against Holman. See ECF No. 1-3, at 17. To state such a claim, a plaintiff must allege facts to support that: (1) she engaged in constitutionally protected activity; (2) the government took adverse action against her; and (3) the adverse action was motivated

by the protected activity. *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). In the prison context, a plaintiff must also show that the retaliatory action was sufficient to deter a person of ordinary firmness from exercising her constitutional rights. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

The ECP Defendants argue that Williams' retaliation claim against Homan fails because she has not alleged that she engaged in protected conduct, that is, she has no constitutional right to file a grievance and because prisoners have no protected liberty interest in any particular housing assignment. *See* ECF No. 12, at 10-12. While the ECP Defendants are correct that Williams had no constitutionally protected right to file an administrative grievance, *see Jackson v. Gordon*, 145 Fed. Appx 774, 777 (3d Cir. 2005), their argument does not meet the claim as Williams frames it.[7] The protected activity she identifies is not the filing of a prison grievance but the filing of a civil rights lawsuit. *See* ECF No. 1-3, ¶28 (Williams' civil rights actions in "the Court of Common Pleas of Erie County at case number 2023-12212 (vs. City of Erie Police Department) and at 2023-12211 (vs. Erie County Prison)"). ¶¶ 66-67 ("Upon learning of the civil lawsuits filed by the Plaintiff ... Holman directly retaliated against Plaintiff ..."). Filing a lawsuit constitutes protected activity under

---

[7] ECP Defendants are also correct that prisoners have no protected liberty interest in a particular housing classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (holding that prisoners have no reasonable expectation that they will be incarcerated in any particular prison); *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007). But the absence of a protected liberty interest necessary to support a procedural due process claim does not foreclose a finding that a retaliatory transfer may be sufficiently adverse to deter a person of ordinary firmness from exercising her constitutional rights.

the First Amendment. *Lakkis v. Lahovski*, 994 F. Supp. 2d 624, 636 (M.D. Pa. 2014) (citing *Allah v. Al–Hafeez*, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002)).

The allegations of Williams' Complaint also support the second element of a retaliation claim. Courts have consistently held that placement in restrictive housing, denial of privileges, and imposition of misconducts can constitute retaliatory acts when their true purpose is to punish a prisoner for engaging in protected activity. *Atkinson v. Taylor*, 316 F.3d 257, 269 (3d Cir. 2003); *Sanders v. Rose*, 808 Fed. Appx 102, 107 (3d Cir. 2020). Here, Williams alleges that she filed a civil rights lawsuit against the prison in response to the denial of access to the grievance process, and that Holman thereafter placed her in a solitary or high-security cell block for no valid penological reason. ECF No. 1-3, ¶¶ 64-69.

To support the third element of the claim—causation—Williams must allege facts to support a plausible inference that her constitutionally protected conduct was "a substantial or motivating factor" for the adverse action that she allegedly suffered. See *Rauser*, 241 F.3d at 333 (3d Cir. 2001) (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)). Because "motivation is almost never subject to proof by direct evidence," an incarcerated plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive." See *Watson*, 834 F.3d at 422. The plaintiff "can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See *Id.* (footnote omitted).

Public records show that Williams filed her civil rights lawsuit against the Erie County Prison in the Court of Common Pleas on September 18, 2023, not long after her hospitalization and the loss of her fetus. *See* ECCP civil docket no. 2023-12211. Williams alleges that "*[i]mmediately* upon learning that the Plaintiff had made efforts to file the lawsuits, ECP staff and particularly Deputy Warden Holman took steps to punish the Plaintiff for filing the lawsuits by moving her to solitary/high security cell where she was not permitted to prepare or file any paperwork" and that "[t]his was done for no valid penological reason." ECF No. 1-3, ¶27. Although Williams does not allege the precise date she was transferred to solitary confinement, she does allege that this occurred "immediately" after Holman learned of her lawsuit. And her allegations sufficiently attribute the action to Holman. These allegations are sufficient to support the causation element of her retaliation claim against Holman. The Court will therefore deny the ECP Defendants' motion to the extent it seeks dismissal of Williams' First Amendment claim against Holman.

> F. The Complaint alleges facts sufficient to state a Fourteenth Amendment deliberate indifference to medical needs claim against P.A. Li.

The Wexford Defendants challenge the legal sufficiency of Williams' allegations to support a deliberate indifference to medical needs claim against P.A. Li.[8] As noted *supra* at note 6, Williams' constitutional protections as a pretrial detainee are grounded in the Due Process Clause of the Fourteenth Amendment, which prohibits a detainee from being punished prior to an adjudication of guilt. See

---

[8] The Wexford Defendants do not challenge the legal sufficiency of the state law medical malpractice claim (Count V) against Li.

*Hubbard*, 399 F.3d at 158 (citation omitted). Although case law does not precisely define when inadequate medical care rendered to a pretrial detainee constitutes "punishment," it is well-established that "the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Whether the claim is under the Eighth or the Fourteenth Amendment, courts recognize that a claim is stated where the plaintiff alleges facts to support plausible inferences that (1) the plaintiff had a serious medical need, and (2) prison or jail officials acted with deliberate indifference to that need. *See Natale*, 318 F.3d at 582; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). This claim thus has an objective element—the existence of a serious medical need—and a subjective element—the defendant's sufficiently culpable state of mind. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).

According to the Complaint, Li's involvement in Williams' care began shortly after Williams arrived at ECP. After Williams complained of labor symptoms, Corrections Officer Huff escorted her to the medical area to be examined by Li. ECF No. 1-3, ¶ 16. Williams informed Li that her contractions were occurring at two-to-three-minute intervals, a frequency consistent with active labor. *Id.* ¶ 17. Li checked her blood pressure, noted that it was elevated, but she did not further examine Williams or assess the status of the fetus. *Id.* ¶ 17. Williams asked to be transported to a hospital to determine why she was in early labor and to assess any risk to the

21

fetus. Li rejected this request, told her she was not in labor, and advised her to go lie down and drink water. *Id.* No further monitoring of Williams' condition occurred that day, even as her contractions continued. *Id.*

Although Li's alleged involvement was short-lived, it is sufficient to support a deliberate indifference claim against her. The allegations of the Complaint support plausible inference that Li knew that Williams may have been in active labor, that such a condition placed her at a severe health risk if not addressed promptly, and that she refused to refer Williams to the hospital for appropriate care or even to monitor her and her fetus's condition. The alleged facts support a plausible finding that Li deliberately disregarded a severe risk to Williams' health. Accordingly, the Court will deny the Wexford Defendants' motion to the extent it seeks dismissal of Count III against Li.[9]

VI.    Conclusion

For the foregoing reasons, the Defendants' motions to dismiss Williams' Complaint will be GRANTED in part and DENIED in part as follows:

The ECP Defendants' motion (ECF No. 11) will be GRANTED as to all claims against ECP (and to the extent properly before the Court, the County of Erie) and as to Count III against Warden Holman (deliberate indifference to medical needs) to the extent the Complaint can be read to assert this claim against him. These claims will be dismissed without prejudice to Williams' opportunity to file an amended

---

[9] As previously discussed, the Court will grant the Wexford Defendants' motion as to the deliberate indifference claims against Wexford based on the insufficiency of the allegations to support a finding that Wexford maintained a policy or custom that led to Williams' constitutional injury.

complaint. The motion will be DENIED as to Count VI (retaliation) against Warden Holman;

The EPD's motion (ECF No. 13) will be GRANTED. The claims against EPD (and to the extent properly before the Court, the City of Erie) will be dismissed without prejudice to Williams' opportunity to file an amended complaint; and

The Wexford Defendants' motion (ECF No. 15) will be GRANTED as to all claims against Wexford. These claims will be dismissed without prejudice to Williams' opportunity to file an amended complaint. The motion will be DENIED as to the claims against P.A. Li (Counts III and V).

All claims will be dismissed without prejudice because the Court finds that amendment is not futile as to any dismissed claim. Williams will be granted leave to file an amended complaint to cure the pleading deficiencies identified herein. Any claims against a defendant named in the Complaint who has yet to be identified or served are unaffected by this Memorandum Opinion and accompanying Court Order.

A separate Order follows.

DATED this 9th day of July, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE